IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| SYMANTHA REED, CHARLES GOEZ, JAMES SPAULDING, GARY CRAWFORD, WENDY WHARTON, MICHELLE WHITEHEAD, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | NO. 21-cv-01155-STA-jay |
| vs. | ) ) | |
| TYSON FOODS, INC., | ) ) | |
| Defendant. | ) ) | |

**ORDER DENYING PLAINTIFFS' MOTION TO REMAND**

Plaintiffs Symantha Reed, Charles Goez, James Spaulding, Gary Crawford, Wendy Wharton, and Michelle Whitehead have filed an emergency motion to remand this matter to the Dyer County Chancery Court from which it was removed. (ECF No. 9.) Defendant Tyson Foods, Inc., Plaintiffs' employer, has responded to the motion. (ECF Nos. 15, 16.) A hearing was held on the motion on October 29, 2021. After considering the briefs, the arguments of counsel at the hearing, and the relevant law, the Court finds that the motion to remand should be **DENIED**.

Background

On October 7, 2021, Plaintiffs filed this action in the Chancery Court for Dyer County, Tennessee, against Tyson Foods. (ECF No. 1-1.) Plaintiffs are current employees of Tyson Foods, and they allege that Tyson Foods has discriminated against them under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4–21–101, *et seq.*, and the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8–50–103, *et seq.*, by requiring them to be vaccinated with the

1

COVID-19 vaccine prior to November 1, 2021, or else go on unpaid leave without the assurance of ever reclaiming their jobs. Plaintiffs also allege a state common law claim of assault.

Defendant Tyson Foods removed the action on October 15, 2021, asserting that this Court has jurisdiction over the matter under diversity-of-citizenship jurisdiction pursuant to 28 U.S.C. §1332 and federal officer jurisdiction under 28 U.S.C. § 1442(a)(1). Defendant contends that the parties are diverse in their citizenship and that the amount in controversy, $75,000, is met by combining each Plaintiff's yearly wages with any other compensatory damages that might be awarded by the Court if Plaintiffs prevail, along with an award of attorney's fees. As to federal officer jurisdiction under 28 U.S.C. § 1442(a)(1), Defendant claims that it is operating its business under the direction of a federal officer pursuant to the April 28, 2020 Executive Order signed by President Donald J. Trump and an order issued by the United States Secretary of the Agriculture.

Plaintiffs contend that remand is appropriate because they seek only declaratory relief that Tyson Foods violated the THRA, TDA, and state tort law, and injunctive relief enjoining Tyson Foods from discriminating against employees by refusing to grant religious or health accommodations to its COVID-19 vaccine mandate. In their motion to remand, they disclaim any rights to compensatory damages, punitive damages, or attorney's fees and assert that they have sought nothing but equitable relief in their state court complaint. Therefore, according to Plaintiffs, the requisite amount in controversy has not been met. Plaintiffs further contend that no federal officer has mandated a vaccine requirement for Defendant's employees which negates subject matter jurisdiction under § 1442(a)(1).

Because the Court finds that Defendant properly removed this matter under 28 U.S.C. § 1442(a)(1), there is no need to decide whether removal was also proper under 28 U.S.C. § 1332. Accordingly, the analysis below is limited to federal officer jurisdiction.

Analysis

The federal officer removal statute permits a defendant to remove to federal court a state court action for an act made under color of office while the defendant was acting under an agency or officer of the United States. 28 U.S.C. § 1442(a)(1). That is, the removal statute applies to private persons "who lawfully assist" a federal officer "in the performance of his official duty." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 150–57 (2007) (quoting *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)).[1] The statute's purpose is to protect the federal government from interference with its "operations." *Watson*, 551 U.S. at 150. "The party seeking removal bears the burden of establishing federal jurisdiction" although "[t]he presumption against removal in ordinary diversity jurisdiction cases does not extend to the federal officer removal statute." *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018) (citations omitted). Moreover, courts must liberally construe § 1442(a). *Id.* (citations omitted); *see also Doe v. ProMedica Health System, Inc.*, 2020 WL 7705713, at *2 (N.D. Ohio Dec. 14, 2020) (explaining that § 1442(a)(1) is "intentionally broad" and "leave[s] room for discretion to district courts applying it to different factual settings").[2] "Jurisdictional allegations control unless it is legally impossible for them to be true." *Betzmer*, 910 F.3d at 1014 (citations omitted). Thus, "a colorable federal defense under § 1442(a) need only be plausible." *Id.*

Federal officer removal is appropriate when "the defendant (1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is

---

[1] In relying on older cases, the *Watson* Court made clear that "[a]ll the Court's relevant post–1948 federal officer removal cases that we have found reflect or are consistent with this Court's pre–1948 views." 551 U.S. at 151.

[2] The Court is mindful that, while courts should interpret this statute liberally, the removing defendant still bears the burden of establishing a basis for federal jurisdiction. *See Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 397 (5th Cir. 1998)

acting under color of federal authority, and (4) has a colorable federal defense." *Id.* at 1015. "Acting under" a federal officer requires a private party to "lawfully assist" a federal officer "in the performance of his official duty," *Davis*, 107 U.S. at 600, while the private party is "authorized to act with or for [the federal officer] in affirmatively executing duties under . . . federal law." *City of Greenwood v. Peacock*, 384 U.S. 808, 824 (1966). "The crux of the inquiry . . . is whether there was a special relationship between the defendant and the federal government," *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 941 (7th Cir. 2020), "distinct from the usual regulator/regulated relationship." *Watson*, 551 U.S. at 157.

Defendant argues that it acted under a federal officer pursuant to President Trump's April 28, 2020 Executive Order which expressly invoked the President's authority under the Defense Production Act of 1950 ("DPA"), as amended, 50 U.S.C. § 4501 *et seq.* The Executive Order directed meat and poultry processing companies, such as Tyson Foods, to stay open and continue operations, subject to the supervision of the Secretary of Agriculture. *See Food Supply Chain Resources*, 85 Fed. Reg. at 26,313, 2020 WL 2060381, at *1. Defendant reasons that, because it is operating under the DPA and supervision from the Secretary of Agriculture, removal under 28 U.S.C. § 1442(a)(1) is warranted. Defendant specifically contends that removal is proper because it is a "person" within the meaning of the statute who "acted under the direction of a federal officer" and its actions were for or related to acts performed under color of federal office. *See Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010) (stating that a defendant seeking removal under § 1442(a)(1) must establish that it is a "person" who "acted under" a federal officer). Defendant also contends that it has colorable federal defenses to Plaintiffs' claims.

In their motion, Plaintiffs rely, in part, on *Fernandez v. Tyson Foods, Inc.*, 509 F. Supp. 3d 1064, (N.D. Iowa 2020), and *Glenn v. Tyson Foods, Inc.*, 2021 WL 3614441 (E.D. Tex. Aug. 12,

4

2021), which granted motions to remand when jurisdiction was predicated on the federal officer removal statute, while Defendant relies on *Fields v. Brown*, 519 F. Supp.3d 388 (E.D. Tex. Feb. 11, 2021), and *Wazelle v. Tyson Foods, Inc.*, 2021 WL 2637335 (N.D. Tex. June 25, 2021), which reached a contrary result. The Court finds *Fields* and *Wazelle* to be persuasive.

<u>Whether Defendant Tyson Foods Is a "Person" within the Meaning of § 1442(a) Who Acted Under a Federal Officer</u>

> As explained by the *Walton* Court,
>
> The relevant relationship is that of a private person "acting under" a federal "officer" or "agency." 28 U.S.C. § 1442(a)(1). In this context, the word "under" must refer to what has been described as a relationship that involves "acting in a certain capacity, considered in relation to one holding a superior position or office." 18 *Oxford English Dictionary* 948 (2d ed.1989). That relationship typically involves "subjection, guidance, or control." Websters New International Dictionary 2765 (2d ed.1953). *See also Funk & Wagnalls New Standard Dictionary of the English Language* 2604 (1942) (defining "under" as meaning "[s]ubordinate or subservient to," "[s]ubject to guidance, tutorship, or direction of"); 18 *Oxford English Dictionary*, *supra*, at 949 ("[s]ubject to the instruction, direction, or guidance of"). In addition, precedent and statutory purpose make clear that the private person's "acting under" must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.

*Watson*, 551 U.S. at 151-152.

Defendant points to the following in support of its argument that it is a "person" within the meaning of § 1442(a) who acted under a federal officer. President Trump's April 28, 2020 Executive Order specifically cited closure of some large food processing facilities (such as Tyson Foods) and directed the Secretary of Agriculture "to ensure that meat and poultry processors continue operations consistent with the guidance for their operations jointly issued by the Centers for Disease Control and Prevention (CDC) of the Department of Health and Human Services and the Occupational Safety and Health Administration (OSHA)." (Not. of Rem. at ¶ 22, ECF No. 1; Executive Order at *1.) The President directed meat processing facilities to remain in operation, stating that "[i]t is important that processors of beef, pork, and poultry . . . in the food supply chain

5

continue operating and fulfilling orders to ensure a continued supply of protein for Americans." (*Id.*)

That same day the Secretary of Agriculture declared that CDC and OSHA guidance would "help ensure employee safety to reopen plants or to continue to operate those still open" and "ensure that these plants are allowed to operate to produce the meat protein that Americans need." (*Id.*) The ongoing direction from both the CDC and OSHA to food processors is that vaccination against COVID-19 is critical to keeping the workforce healthy, including reducing illness and improving productivity and morale. (*Id.* at ¶¶ 24-27.)

Defendant points out that Plaintiffs acknowledge that Tyson Foods is closely monitored by the federal government but characterize Tyson Foods' actions as merely complying with the law without regard to the circumstances or government direction during the pandemic. However, as noted by Defendant, the April 28, 2020 Executive Order designated Tyson Foods as "critical infrastructure" with the purpose of that designation to continue operations during a national emergency. Accordingly, Tyson Foods was working with federal officers to fulfill a responsibility of the federal government, *i.e.*, to "produce an item that [the government] needs" for the national defense. *Watson*, 551 U.S. at 153. By assisting with and carrying out the federal government's directives to maintain the national food supply, Tyson Foods went beyond "simple compliance with the law;" instead, it acted to "assist" and "help carry out" the duties of the federal government, therefore, meeting the removal requirement that it is acting under a federal officer. *Watson*, 551 U.S. at 152, 153. *See also Campbell v. EPI Healthcare*, 2009 WL 395498, at *1 (E.D. Ky. 2009) (holding that defendant satisfied the "acting under federal officer" prong because it helped carry out "basic governmental tasks").

Plaintiffs' reliance on *Glenn* is unavailing. In that case, the court held that the defendant could not have been "acting under" a federal officer pursuant to the April 28, 2020 Executive Order because the plaintiff's claims arose prior to that date. 2021 WL 3614441, at *2. Likewise, in *Fernandez*, the court rejected the defendant's argument that it acted under the direction of a federal officer when it followed the April 28, 2020 Executive Order because the events giving rise to the plaintiff's claims arose before that date. 509 F. Supp. 3d at 1081. Here, Tyson Foods' COVID-19 vaccination policy was implemented after President Trump's Executive Order was enacted and is consistent with the directive to stay open and continue operations subject to the supervision of the Secretary of Agriculture.

As noted previously, the *Wazelle* and *Fields* courts denied motions to remand. Those courts concluded that Tyson Foods acted under a federal officer because it worked closely with the government to "guarantee that there was an adequate food supply" for the country. *Wazelle*, 2021 WL 2637335, at *4 (explaining that the Department of Agriculture and the Food Safety and Inspection Service ("FSIS") "closely monitored Tyson Foods' meatpacking plants, staffing some employees onsite during the pandemic," and that "Congress even allocated additional funding to FSIS to ensure that they had the resources" to supervise meatpacking plants during the pandemic); *Fields*, 519 F. Supp. at 393 (same).

This Court adopts the reasoning of *Wazelle* and *Fields* as follows. "When a national emergency was declared in response to the COVID-19 pandemic on March 13, 2020, Tyson Foods, along with other components of the Food and Agriculture Sector, was designated as critical infrastructure." *Fields*, 519 F. Supp. 3d at 392. From that point forward, Tyson Foods "interacted," "collaborat[ed]," and "work[ed] directly with" federal officers to assist the U.S. government to fulfill the government's responsibility of "guarantee[ing] that there was an adequate food supply."

7

*Id.* at 293. "Accordingly, . . . [Tyson was] 'acting under' the directions of federal officials" from the time of the national emergency declaration. *Wazelle*, 2021 WL 2637335, at *5.

Whether Defendant's Actions Were Related to Acts Performed Under Color of Federal Office

Section 1442(a)(1) additionally requires that a defendant removing a case demonstrate that the alleged conduct by the defendant is for, or relates to, an act under color of federal office. In 2011 Congress amended the federal officer removal statute to relax this requirement so that the civil action being removed need only "relat[e] to any act under color of such office." 28 U.S.C. § 1442(a)(1). This addition was "intended to broaden the universe of acts that enable Federal officers to remove to Federal court." H.R.Rep. No. 112–17, pt. 1, at 6 (2011). The federal officer removal statute thus no longer imposes a "direct causal nexus" requirement. *See Latiolais v. Huntington Ingalls, Inc.*, 951 F. 3d 286, 291-292 (5th Cir. 2020) (discussing the evolution of the "direct causal nexus" requirement through legislation and caselaw). By "plainly express[ing] that a civil action relating to an act under color of federal office may be removed," Congress "broadened federal officer removal to actions, not just causally connected, but alternatively connected or associated, with acts under color of federal office." *Id.* at 292. The statute thereby renders a plaintiff's claims removable as long as they are "connected" or "associated" with federal directions. *Id.*; *see also Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) ("[T]here need be only 'a connection or association between the act in question and the federal office.'") (citation omitted); *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 471 (3d Cir. 2015) (same).

In the present case, Plaintiffs' claims satisfy the causal connection required by § 1442(a). Plaintiffs' claims related to Tyson Foods' vaccination policy are connected to the federal directive to "continue operating and fulfilling orders to ensure a continued supply of protein for Americans,"

8

Executive Order at *1, and do so in compliance with CDC and OSHA workplace safety guidelines. Moreover, any dispute about Tyson Foods' compliance with or the scope of Tyson Foods' authority to implement the federal directives "is one for the federal — not state — courts to answer." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 138 (2d Cir. 2008) (stating that federal courts must resolve "whether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government") (citing *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)).

Plaintiffs point out that that the removal relies on OSHA guidance dated August 13, 2021, which was issued <u>after</u> Tyson Foods announced its COVID-19 vaccination policy. However, Defendant was directed to continue to operate subject to applicable federal guidance from the CDC and OSHA, and the August 13, 2021 guidance cited in Tyson Foods' removal notice is not the only guidance that either agency issued recommending COVID-19 vaccines for workers.

<u>Whether Defendant Tyson Foods Has Raised Colorable Federal Defense(s) to Plaintiffs' Claims</u>

As explained in *Latiolais*,

> Federal officers may remove cases to federal court that ordinary federal question removal would not reach. In particular, section 1442(a) permits an officer to remove a case even if no federal question is raised in the well-pleaded complaint, so long as the officer asserts a federal defense in the response. As the Supreme Court has explained, "the raising of a federal question in the officer's removal petition ... constitutes the federal law under which the action against the federal officer arises for Art. III purposes." *Mesa v. California*, 489 U.S. 121, 136, 109 S. Ct. 959, 968, 103 L.Ed.2d 99 (1989).

*Latiolais*, 951 F.3d at 290. Thus, although a defendant must raise a colorable federal defense for removal under § 1442(a)(1), this requirement erects only a "low bar." *In re Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d 1064, 1077 (N.D. Ohio 2018) ("This prong also erects a low bar and merely requires that the defendant's assertion is both 'defense' and 'based in federal law.'"). A colorable defense need only be "plausible," and courts should not apply a "grudgingly narrow

interpretation of the removal statute" because removal pursuant to § 1442(a)(1) is "meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." *Bennett*, 607 F.3d at 1090 (quoting *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 397-98 (5th Cir. 1998)).  The right of a federal officer to raise a defense arising out of his federal duties "is not to be frustrated by a grudgingly narrow interpretation of the removal statute." *Arizona v. Manypenny*, 451 U.S. 232, 241–42 (1981); *see also Doe*, 2020 WL 7705713, at *3 ("A defense based on federal preemption of state law is sufficient to raise a colorable federal defense for the purposes of the federal officer removal statute.")  One of the "most important functions" of the right of removal under § 1442(a)(1) is to "allow a federal court to determine the validity" of a federal defense asserted by a federal officer or a person acting under such an officer. *Bennett*, 607 F.3d at 1090 (quoting *Winters*, 149 F.3d at 397-98).

In the present case, Defendant has asserted federal defenses of preemption based on (1) President Trump's Executive Order, (2) the Federal Meat Inspection Act ("FMIA"), 21 U.S.C. § 602, *et seq.*, (3) the Poultry Protection Inspection Act ("PPIA"), 28 U.S.C. § 467e.

The Executive Order issued by the President and implemented by the Secretary of Agriculture directed Defendant to continue operating its meat and poultry processing facilities consistent with the CDC's and OSHA's guidance. The Court agrees with Defendant that those directives, issued after the President invoked the DPA, preempt any attempt to change the policy balance between securing the food supply for the country and reducing the spread of COVID-19. The Court also agrees with Defendant that it is "simply implausible that Congress would have gone to such lengths to empower the President if it had been willing to compromise his effectiveness by deference to every provision of state [law] that might, if enforced, blunt the consequences of discretionary Presidential action." *Crosby v. Nat'l Foreign Trade Council*, 530

U.S. 363, 376 (2000). Because "the purpose of the [DPA] cannot otherwise be accomplished" while allowing states to implement their own, potentially inconsistent policy decisions for meat and poultry processor operations during the COVID-19 pandemic, "the state law must yield." *Savage v. Jones*, 225 U.S. 501, 533 (1912). The fact that the DPA "plausibly shields" Tyson Foods from liability, either through preemption or otherwise, *see United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001), is sufficient to show a colorable federal defense and justify federal officer removal.

Defendant also has a colorable federal defense under the FMIA which expressly preempts any attempt by the states to impose regulations that are "in addition to, or different than" those prescribed under the FMIA:

> Requirements within the scope of this [Act] with respect to premises, facilities and operations of any establishment at which inspection is provided under subchapter I of this chapter, which are in addition to, or different than those made under [the Act] may not be imposed by any State . . . .

21 U.S.C. § 678. *See Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 455-456 (2012) (reiterating that federal law "regulates a broad range of activities" related to meat processing). The FMIA "sweeps widely" and "prevents a State from imposing any additional or different — even if non-conflicting —requirements that fall within the scope of the Act and concern a slaughterhouse's facilities or operations." *Id.* at 459-60.

In *Wazelle*, the Court held that "workplace conditions and procedures related to disease prevention implicate food safety, which could bring Plaintiffs' claims under the ambit of the FMIA" and, therefore, Tyson Foods set forth a plausible, colorable federal defense under the FMIA. 2021 WL 2637335, at *3. Here, the alleged violations of the TDA, THRA, and state common law are "in addition to, or different than" the requirements that the FSIS has imposed regarding infectious disease. Tyson Foods' vaccination policy relates to workplace conditions and

11

procedures concerning disease prevention and implicates food safety. Thus, Plaintiffs' claims are plausibly preempted under 21 U.S.C. § 678.

Defendant also has a colorable federal defense under the PPIA which preempts any attempt by the states to impose regulations that are "in addition to, or different than" those prescribed under the PPIA:

> Requirements within the scope of this [Act] with respect to premises, facilities and operations of any official establishment which are in addition to, or different than those made under this [Act] may not be imposed by any State . . . .

21 U.S.C. § 467e. This provision is "substantially identical" to the preemption provision in the FMIA. *See Grocery Mfrs. of Am., Inc. v. Gerace*, 755 F.2d 993, 997 (2d Cir. 1985) (noting that the PPIA and FMIA preemption provisions are substantially identical). Like the FMIA, the question of whether a requirement falls within the scope of the PPIA depends on whether the Department of Agriculture could have adopted the requirement. *Harris*, 565 U.S. at 556.

Plaintiffs argue that the purpose of the PPIA is to protect consumers from unsafe meat, not to protect workers from discriminatory actions by their employers. However, the PPIA also prohibits state-law requirements "with respect to premises, facilities, and operations." 21 U.S.C. § 467e. Tyson Foods' vaccination policy relates to its premises, facilities, and operations by ensuring that its employees are protected from COVID-19 infection; accordingly, Plaintiffs' claims fall within the scope of the PPIA. *See Fields*, 519 F. Supp. 3d at 392 (holding that Tyson Foods set forth a plausible colorable defense under the PPIA which prohibits state-law requirements "with respect to premises, facilities, and operations.").

Because Defendant properly removed this matter under 28 U.S.C. § 1442(a)(1), Plaintiffs' motion to remand is **DENIED**.

**IT IS SO ORDERED**.

                                                **s/ S. Thomas Anderson**
                                                S. THOMAS ANDERSON
                                                CHIEF UNITED STATES DISTRICT JUDGE

                                                Date: November 3, 2021.