IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| SYMANTHA REED, CHARLES GOETZ, JAMES SPAULDING, WENDY WHARTON, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 21-cv-01155-STA-jay |
| vs. | ) ) | |
| TYSON FOODS, INC., | ) ) | |
| Defendant. | ) ) | |

**ORDER GRANTING PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND ORDER OF REFERENCE ON ISSUE OF DAMAGES**

Plaintiffs Symantha Reed, Charles Goetz, James Spaulding, and Wendy Wharton filed this action in the Dyer County Chancery Court against their employer Tyson Foods, Inc.[1] Defendant Tyson Foods removed the action, with jurisdiction predicated on diversity-of-citizenship jurisdiction, 28 U.S.C. §1332, and federal officer jurisdiction, 28 U.S.C. § 1442(a)(1). Plaintiffs filed an amended complaint on November 18, 2021. (ECF No. 21.)

The amended complaint alleges that Defendant violated Plaintiffs' rights under the United States Constitution, the Tennessee Constitution, and various federal and state statutes. The only remaining claim is the claim brought by Plaintiffs Reed, Goetz, Spaulding, and Wharton that Defendant violated Tenn. Code Ann. § 14-1-101 *et seq.* ("Title 14"), by requiring them to be

---

[1] Michelle Whitehead also filed suit but was dismissed from the action by agreement of the parties. (ECF No. 68.) The claims brought by Gary Crawford have also been dismissed. (ECF No. 69.)

1

vaccinated with the COVID-19 vaccine or else go on unpaid leave without the assurance of ever reclaiming their jobs.

Before the Court are cross-motions for summary judgment. Plaintiffs have filed a partial motion for summary judgment on the issue of liability (ECF No. 78), and Defendant has filed a motion for summary judgment. (ECF No. 79.) Defendant has filed a response to Plaintiffs' motion (ECF No. 85), and Plaintiffs have filed a reply to Defendant's response. (ECF No. 91.) Plaintiffs have responded to Defendant's motion for summary judgment (ECF No. 89), and Defendant has filed a reply to the response. (ECF No. 92.)

For the reasons set forth below, Plaintiffs' motion for partial summary judgment is **GRANTED**, and Defendant's motion for summary judgment is **DENIED**.

Standard of Review

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court does not engage in "jury functions" like "credibility determinations and weighing the evidence." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). Rather, the question for the Court is whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled

2

to a verdict. *Anderson*, 477 U.S. at 252. In other words, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Statement of Undisputed Facts

Pursuant to the Local Rules of this Court, Plaintiffs have prepared a statement of material undisputed facts (ECF No. 78-2) "to assist the Court in ascertaining whether there are any material facts in dispute." Local Rule 56.1(a). Defendant has submitted its own statement of material undisputed facts. (ECF No. 79-2.) Defendant has responded to Plaintiffs' statement (ECF No. 85-1), and Plaintiffs have responded to Defendant's statement. (ECF No. 89-1.)

A fact is material if it "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994), and *Anderson,* 477 U.S. at 247–48). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite to particular parts of the materials in the record and show that the materials fail to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1). The non-moving party must respond to the moving party's statement of facts "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." Local Rule

3

56.1(b). Additionally, the non-moving party may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

If the non-movant asserts that a genuine dispute of material fact exists, he must support his contention with a "specific citation to the record." Local Rule 56.1(b). If a party fails to demonstrate that a fact is disputed or fails to address the opposing party's statement of facts properly, the Court will "consider the fact undisputed for purposes" of ruling on the motion. Fed. R. Civ. P. 56(e)(2); *see also* Local Rule 56.1(d) ("Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment."). Under Rule 56 of the Federal Rules of Civil Procedure, the Court "need consider only the cited materials" but has discretion to "consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The Court finds that there is no genuine dispute as to the following material facts, unless otherwise noted.

On August 3, 2021, Tyson announced that, as a condition of continued employment and in the absence of documented and approved reasonable accommodations for a disability or sincerely held religious beliefs, practices, or observances, all Tyson employees in the United States would be required to be vaccinated against COVID-19.

On August 25, 2021, Johanna Soderstrom, Defendant's Chief Human Resources Officer, emailed Plaintiff Reed to "please verify your vaccination status." (ECF No. 21-2.) The email stated that it was for "All Wired U.S. – Based Team Members." (*Id.*) The email reiterated that Defendant required all "U.S. team members to be fully vaccinated" by November 1, 2021. (*Id.*) The email

4

instructed, *inter alia*, that an employee could update his/her vaccination status on a "new vaccination site" and could "confidentially submit [the employee's] vaccination card." (*Id.* at p. 2) The email further stated that updates should be made by August 25. (*Id.*)

In Defendant's response to the charges of discrimination filed with the EEOC by Plaintiffs Reed and Spalding, Defendant outlined its vaccination policy as follows:

II. THE COMPANY'S VACCINATION POLICY

A. Implementation of the Vaccination Policy

Based on guidance from public health authorities and an increasing body of medical and scientific evidence, the Company made the decision that the COVID-19 vaccination is the single best way to ensure the safety of its team members, their families, and the communities in which it operates.
On August 3, 2021, the Company announced that as a condition of continuing employment and in the absence of documented and approved reasonable accommodations for disability or sincerely held religious beliefs, practices or observances, all U.S.-based team members would be required to be vaccinated against COVID-19 and **to provide proof of vaccination on or before certain deadlines.**

(Exhs. Pls' Resp. Mot. Summ. J. p. 8, ECF No. 89-8 (emphasis added); ECF No. 89-9).

For those employees who objected to being vaccinated, Defendant offered a Leave of Absence Plus ("LOA Plus"), which began on November 1, 2021, and allowed Tyson team members to stay employed with Tyson, keep their Tyson health insurance if they paid the premiums, and seek employment with other employers during the leave period.[2] Tyson's unpaid leave policy for employees who sought disability or religious accommodations was expressly designated as "subject to change" and stated that "[i]n the coming months, risks may be mitigated

---

[2] The parties dispute whether LOA Plus was a "reasonable accommodation" for Plaintiffs' requests for exemptions from the vaccine mandate. Because Plaintiffs' sole remaining claim is under Title 14, whether Tyson made a reasonable accommodation for Plaintiffs' religious beliefs is not relevant to the pending motions for summary judgment.

5

in other ways which may allow you to return to work. If a return-to-work option becomes available, you will be notified."

Tyson has not disputed that Plaintiffs held sincere religious beliefs that conflicted with being vaccinated against COVID-19.

Tyson lifted its vaccine mandate on October 31, 2022, and notified Plaintiffs that they could return to work without receiving the vaccine. None of the Plaintiffs had any contact with Tyson until they were informed that they could return to work without receiving the vaccine. All four Plaintiffs had jobs with other employers at the time the vaccine mandate ended.[3]

Plaintiff Wendy Wharton worked for Tyson as a quality assurance employee at Tyson's plant in Union City, Tennessee, from February 2019 to November 1, 2021. She was forty-six years old and had planned on retiring from her job with Tyson.

Because her religious beliefs conflicted with Tyson's requirement that all employees receive the COVID vaccine, she requested a religious accommodation exemption to Defendant's mandatory COVID-19 vaccine policy by submitting a completed religious accommodation request to Ben Milligan in the HR Department. In response to her request, Wharton was placed on LOA Plus which allowed her to remain an employee, although unpaid, keep her health insurance if she paid the premiums, and work for other employers during the leave period. Wharton remained an employee of Tyson while on LOA Plus, although she was not paid any wages by Tyson. Wharton found other employment after she was placed on LOA Plus.[4]

Plaintiff James Spaulding worked as a registered nurse for Tyson at its plant in Union City,

---

[3] The parties dispute the amount of wages paid to each of the Plaintiffs through other employment after being placed on LOA Plus. That issue is not relevant to the present motions concerning liability.
[4] The parties dispute whether Wharton rejected Tyson's offer to return to work after the vaccine mandate was lifted.

Tennessee, for four years prior to the implementation of the mandatory vaccine policy.

Because Spaulding's religious beliefs conflicted with Tyson's requirement that all employees receive the COVID vaccine, he requested a religious accommodation exemption to the mandatory vaccine policy and submitted a completed religious accommodation request to Ben Milligan in the HR Department. In response, Tyson placed Spaulding on LOA Plus, which allowed him to remain an employee, although unpaid, keep his health insurance if he paid the premiums, and work for other employers during the leave period.

After being placed on LOA Plus leave, Spaulding found other employment. He never tried to return to work at Tyson after November 1, 2021, and elected not to contact Tyson about a return to work after the vaccine mandate was lifted.

Plaintiff Charles Goetz worked for Defendant as a maintenance supervisor at its plant in Union City, Tennessee, for twenty-three years from 1998 to November 1, 2021. Because Goetz's religious beliefs conflicted with Tyson's requirement that all employees receive the COVID vaccine, he requested a religious accommodation exemption to Defendant's COVID-19 vaccine policy and submitted a completed religious accommodation request to the HR Department. In response to his request, Tyson placed him on LOA Plus, which allowed him to remain an employee of Tyson, although unpaid, keep his health insurance with Tyson if he paid the premiums, and work for other employers.

Goetz found other employment after being placed on LOA Plus. After being told that the vaccine mandate was being lifted, he contacted Erich Felkner, as instructed, to assess what positions might be available to him. He later got a letter indicating that no position was available at that time.

Plaintiff Symantha Reed worked for Defendant as a registered nurse at Tyson's plant in

Newbern, Tennessee, for over five years prior to November 2021. Because Reed's religious beliefs conflicted with Tyson's requirement that all employees receive the COVID vaccine, she spoke with the Newbern Plant's Senior HR Manager Ronda Gooch about a religious accommodation.[5] Reed submitted a completed religious accommodation request form to Gooch. In response, Tyson placed Reed on LOA Plus accommodation that allowed her to remain an employee, although unpaid, keep her health insurance if she paid the premiums, and work for other employers during the leave period.

Reed obtained another job after being placed on LOA Plus.  After November 1, 2021, Reed did not speak to anyone about returning to work at Tyson.

In October 2022, Defendant notified Plaintiffs that the vaccine mandate had ended and they could return to work in an unvaccinated state.

## Analysis

The Tennessee General Assembly enacted Title 14 of the Tennessee Code Annotated, effective November 12, 2021, to create a number of protections related to COVID-19. Section 14-2-102 provides that "[a] private business, governmental entity, school, or local education agency shall not compel or otherwise take an adverse action against a person to compel the person to provide proof of vaccination if the person objects to receiving a COVID-19 vaccine for any reason." Tenn. Code Ann. § 14-2-102(a).  Title 14 grants a person injured as a result of such a violation a private right of action to seek "injunctive relief and to recover compensatory damages and reasonable attorneys' fees against an alleged violator." § 14–6–103.

The first issue is whether Defendant meets the statutory definition of a "private business." Tenn. Code Ann. § 14–1–101(15) (defining a "private business" as a "corporation ... engaged in

---

[5] Plaintiff Reed also objected to receiving a vaccine for medical reasons.

8

business or commerce" in Tennessee), and the Court finds that it does. The amended complaint alleges that Defendant "together with its subsidiaries, is a corporation that operates as a worldwide food processing and marketing company" and "is the world's second largest processor and marketer of chicken, beef, and pork." [6] (Amd. Cmplt. paras. 15-16.) Defendant does not dispute this description (Ans. paras. 15-16, ECF No. 72); moreover, in its motion for summary judgment, Defendant acknowledges that it is a private employer when it argues that Title 14 permits private employers to require vaccinations as long as they do not require proof of vaccination. (Def's Mot. Summ. J. p. 8, ECF No. 79-1.)

Next, the Court finds that Defendant's decision to place Plaintiffs on a one-year leave without pay without the assurance of being able to reclaim their jobs constitutes an "adverse action." The Court also finds that Defendant took that adverse action against Plaintiffs to compel them to provide proof of vaccination; that is, if Plaintiffs had provided proof of vaccination they would not have been placed on a one year leave of absence. The Court previously made these same findings in its order partially granting and partially denying Defendant's motion to dismiss and now reiterates those findings. (Ord. p. 36, ECF No. 69.) Although Defendant is correct that there is a different standard in ruling on a motion to dismiss and a motion for summary judgment, in the previous order the Court did not merely find that Plaintiffs had "plausibly alleged" that an adverse action had been taken against them and that the adverse action was taken to compel them

---

[6] Later in the amended complaint, Plaintiffs refer to Defendant as "a self-declared governmental entity." (Amd. Complt. para 266.) This description appears to be based on the Court's previous finding that it has jurisdiction over this matter pursuant to the federal officer statute, 28 U.S.C. § 1442(a)(1). (Ord. ECF No. 20.). The Court's previous finding does not negate its present determination that Defendant is a private employer within the meaning of Title 14 because "the removal statute applies to private persons when they 'lawfully assist' a federal officer 'in the performance of his official duty.'" *Reed v. Tyson Foods, Inc.*, 2022 WL 2134410, at *2 (W.D. Tenn. June 14, 2022). *Accord Doe v. Christ Hosp.*, 2023 WL 4757598, at *2 (S.D. Ohio July 26, 2023).

9

to provide proof of vaccination. Instead, the Court made an unequivocal determination. However, because Defendant has raised the issue, the Court will again analyze the relevant law as it applies to adverse actions and the facts of this case.

Section 14–1–101(1)(B) defines "adverse action" as "(A) discriminat[ion] against a person by denying the person employment, privileges, … or other benefits; or (B) discharge, threaten, or otherwise discriminate against an employee in any manner that affects the employee's employment including compensation, terms, conditions, locations, rights, immunities, promotions, or privileges." A year's leave without pay without the assurance of being reinstated at the end of the year is an adverse action. *See Campbell v. Mobile Sol. Corp.*, 2010 WL 796759, at *4 (S.D. Ohio Mar. 2, 2010) ("Being placed on leave without pay and terminated from employment are clearly adverse employment actions."); *see also Johnson v. Alice Ind. School Dist.*, 2012 WL 4068678, at *3 (S.D. Tex. Sept. 14, 2012) ("While administrative leave, by itself, may not constitute an adverse employment action, being placed on administrative leave without pay does."); *Morales v. Ga. Dep't of Human Res.*, 2010 WL 4639279, at *13 (M.D. Ga. Nov. 8, 2010) (collecting cases holding that requiring an employee to take leave without pay could be considered an adverse employment action); *Wingfield v. S. Univ. of Fla., Inc.*, 2010 WL 2465189, at *13 (M.D. Fla. June 15, 2010) (holding that forcing an employee to take leave without pay alters the employee's compensation and the terms, conditions, and privileges of the employee's employment); *White v. Potter*, 2007 WL 1330378, at *11 (N.D. Ga. Apr. 30, 2007) (concluding that the defendant's requirement that the plaintiff take leave without pay constituted a materially adverse action under the circumstances); *Kinsey v. City of Jacksonville*, 2005 WL 3307211, at *8 (M.D. Fla. Dec. 6, 2005) ("Requiring an employee to take leave without pay could be considered an adverse employment action as it directly affects the employee's compensation."), *aff'd* 189 F. App'x 860 (11th Cir.

2006). Moreover, Plaintiffs could only receive employer sponsored health insurance if they themselves paid the premiums – which was a change in their benefits. This, too, constitutes an adverse action.

Defendant argues that placing Plaintiffs on leave without pay status was not an adverse action because Plaintiffs were free to find other work during that year. Defendants' argument is unpersuasive. First, there was no guarantee that Plaintiffs would, in fact, find other employment or that other employment would provide a comparable level of compensation and benefits. Second, the statute gives employees the right not to have an adverse action taken against them based on their refusal to provide proof of vaccination; any mitigation efforts may reduce Plaintiffs' damages, but it does not negate their claim. And, third, Plaintiffs were told that at the end of the year their employment would be terminated if they continued to fail to produce proof of vaccination. The threat of termination in and of itself is an adverse action.

Because being placed on a year's leave without pay, which included the employee's having to pay his or her own insurance premiums, and without the assurance of employment at the end of that year, "well might have dissuaded a reasonable worker" from exerting his or her rights under Title 14, *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, (2006), the Court finds that Plaintiffs were subjected to an adverse action and that clearly there was a causal connection between their refusal to provide proof of vaccination and the adverse action in that it is undisputed that Plaintiffs would not have been placed on leave without pay status if they had provided proof of vaccination.

Finally, Defendant argues that, because the announcement of the vaccine mandate and the granting of LOA Plus occurred prior to the effective date of Title 14, it could not have violated Title 14. That is, Defendant contends that Plaintiffs' Title 14 claim fails because any adverse

action(s) occurred prior to the enactment date of the statute and there is no retroactivity provision in the statute. Plaintiffs have responded that their unpaid leave and ultimate termination were ongoing acts of discrimination. According to Plaintiffs, their unpaid leave is akin to a continuing violation, which, although it began prior to Title 14's effective date, continued after the law went into effect.

The pertinent dates in this matter are as follows. Plaintiffs were notified of Defendant's vaccine mandate on August 3, 2021. Defendant responded to Plaintiffs' requests for medical or religious exemptions by informing those employees that they would be placed on unpaid leave of absence with no assurance that they would be allowed to return to the workplace for up to one year beginning November 1, 2021. Plaintiffs did not provide proof of vacation and, after the November 1, 2021 deadline passed, were placed on unpaid leave. Title 14 took effect on November 12, 2021. Subsequently, Plaintiffs were notified that Defendant lifted its vaccine requirement on October 31, 2022, and they could contact Defendant about reclaiming their jobs.

The Court recently addressed the retroactivity issue in *Hayslett v. Tyson Foods, Inc.*, No. 1:22-CV-1123-STA-Jay, 2022 WL 12029381 (W.D. Tenn. Oct. 20, 2022).[7] Although this arose in the context of a motion to dismiss, the analysis in *Hayslett* is instructive.

> Defendants' retroactivity point is true, as far as it goes. Generally speaking, Tennessee statutes do not apply retroactively, subject to narrowly defined exceptions. *Nutt* [*v. Champion International Corporation*, 980 S.W.2d 365, 368 (Tenn. 1998)] ("An exception to the prospective-only application exists for statutes which are remedial or procedural in nature."). The critical distinction between *Nutt*

---

[7] The facts in *Hayslett* are slightly different from those in the present case. In *Hayslett*, the plaintiff employee "specifically requested permission to return to work in May 2022. Defendants denied her requests, telling Plaintiff she could not return until she was vaccinated and that she would 'continue to be locked out of the facility.' The Complaint alleges that Defendants have therefore terminated or constructively terminated Plaintiff's employment." *Id.* at *3 (citations omitted). In this case, there is no allegation that any action was taken by either party after November 1, 2021, until letters were sent to Plaintiffs in October 2022 concerning the abolishment of the vaccination policy.

and Plaintiff's case is the fact that *Nutt* addressed an amendment to an existing law, specifically the remedies available to an employer under Tennessee worker's compensation law. Plaintiff's case against Defendants is not that an amendment to an existing law should apply retroactively to an injury happening before the effective date of the amendment. Rather Plaintiff seeks to hold Defendants liable for violations of an entirely new legislative enactment applied prospectively to address ongoing conduct prohibited by the newly enacted law. *See Bazemore v. Friday*, 478 U.S. 385, 395, 106 S. Ct. 3000, 92 L.Ed.2d 315 (1986) ("A pattern or practice that would have constituted a violation of Title VII, but for the fact that the statute had not yet become effective, became a violation upon Title VII's effective date, and to the extent an employer continued to engage in that act or practice, it is liable under that statute."). The fact is Title 14 protects Plaintiff and other similarly situated persons from certain types of adverse actions like unpaid leave, and the Tennessee General Assembly has stated its intention that courts construe Title 14 "broadly" to effectuate its purposes. Tenn. Code Ann. § 14–1–103. To accept Defendants' position would not just narrow Title 14's application but "would have the effect of exempting from liability" any employer who decided to take an adverse action against an employee (and just days before Title 14 took effect) and then adhered to its decision even though the employer was violating the new law. *Bazemore*, 478 U.S. at 395, 106 S. Ct. 3000. The Court finds Defendants' retroactivity argument to be unpersuasive.

*Hayslett*, 2022 WL 12029381, at *4.

This Court then addressed Defendant's argument that "any claim Plaintiff may have had based on her unpaid leave constitutes a discrete employment action and therefore accrued prior to the effective date of Title 14." *Id.* at *5. The Court rejected that argument because "[u]nder Tennessee's traditional accrual rule, Plaintiff's Title 14 claim could not have accrued on November 1, 2021. Plaintiff did not have 'a cause of action and the right to sue' on that date." *Id.* (citations omitted). Thus, "Defendants' argument that the cause of action based on a statutory violation somehow accrued at a time before the statute's enactment and when Plaintiff could not have filed suit [was] unconvincing, particularly at the pleadings stage and where Defendants ask the Court to decide the question as a matter of law." *Id.* Based on this analysis, the Court found that the *Hayslett* complaint plausibly alleged that the ongoing unpaid leave offered to the plaintiff employee violated Title 14, and the motion to dismiss was denied. *Id.*

13

Considering the cross-motions for summary judgment in the present case, the Court finds that the undisputed facts show that Defendant violated the rights of Plaintiffs Reed, Goetz, Spaulding, and Wharton under Title 14 despite the fact that their unpaid leave began before the effective date of the statute, especially in light of the fact that they were informed that after one year they would be terminated from their positions with Defendant - clearly their termination would have occurred after the enactment date. Although Defendant adopted the mandate prior to November 12, 2021, the effective date of Title 14, it is undisputed that the policy continued after that date, and Plaintiffs continued to suffer from the adverse actions caused by the policy. Specifically, Plaintiffs were not allowed to continue working at their jobs and did not receive a paycheck, they were only allowed to continue with their health insurance if they paid the premiums, and they were not assured of being able to return to work at the end of their year's unpaid leave – all because they did not provide proof that they had been vaccinated. Thus, the Court finds as a matter of law that Defendant violated Plaintiffs' rights under Title 14, and they are entitled to judgment as a matter of law.

Accordingly, Plaintiffs' motion for partial summary judgment is **GRANTED**, and Defendant's motion for summary judgment is **DENIED**. This matter is hereby **REFERRED** to the Magistrate Judge for a report and recommendation on Plaintiffs' damages.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 28, 2024